| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | Hearing Date: 11/18/09 |
| NORTHERN DISTRICT OF NEW YORK | Hearing Time: 10:30 a.m. |

---------------------------------------------------------x   Hearing Place: Albany

In re

GREENER CLEANERS LTD.,

                                    Chapter 11
                                    Case No. 08-14239

                            Debtor.
---------------------------------------------------------x

## NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION'S MOTION FOR DETERMINATION OF ADMINISTRATIVE EXPENSE PRIORITY

Pursuant to Rule 9013 and 11 U.S.C. § 503(b)(1)(A), the New York State Department of Environmental Conservation ("DEC") hereby moves for an order determining that the costs and expenses incurred to address contamination at the Site constitute the actual and necessary costs and expenses of preserving an asset of the estate and are therefore entitled to administrative expense priority.

## BACKGROUND

Greener Cleaners ("Debtor") owns and operates a dry cleaning facility located at 809 State Street in Schenectady ("Site"). DEC conducted an inspection of the Debtor's dry cleaning facility at the Site in October 2007 and discovered numerous violations of the agency's regulations for dry cleaners, codified at 6 NYCRR Part 232. See Claim No. 28, Exhibit (copy of DEC notice and hearing of complaint attached to the agency's proof of claim filed 5/22/09). DEC found a number of violations of Part 232 relating to the operation and maintenance of the facility's dry cleaning machines, which at the time used the solvent perchloroethylene ("perc" or "PCE") in the dry cleaning process. Id. For example, DEC inspectors found violations of 6 NYCRR Part 232.11(a)(1)(I), which

requires dry cleaning facilities to be operated and maintained to ensure that perc releases are contained and do not migrate to sewer systems or groundwater.  Id.  Perc has been linked to an increased risk of cancer, as well as adverse effects to the nervous and reproductive systems.  See New York State Department of Health, Tenant Notification Sheet for Tetrachloroethene (Perc), January 2009, available at http://www.health.state.ny.us/environmental/indoors/air/contaminants/docs/perc.pdf.

During 2008, in the course of attempting to resolve the violations found during the October 2007 inspection, DEC and the Debtor attempted to negotiate an administrative consent order under which the Debtor would have undertaken an investigation of the Site and paid a penalty.  These negotiations broke off after the Debtor filed its Chapter 11 petition in December 2008.

In February 2009, DEC retained Precision Environmental Services, Inc. ("PES") to conduct a subsurface investigation to determine the extent and magnitude of solvent contamination in groundwater and soil at the Site.  See Affidavit of DEC Engineer Keith Goertz (attached hereto as *Exhibit A*), ¶ 2.  At the same time, DEC moved forward with administrative enforcement against the Debtor, serving a notice of hearing and complaint on the Debtor on February 17, 2009.  See Claim 28, Exhibit.  The complaint seeks injunctive relief requiring the Debtor to investigate and remediate contamination at the Site and the payment of $36,500 in penalties based on the number and extent of violations found during the October 2007 inspection.[1]  After the Debtor failed to respond to the complaint, DEC moved for default judgment.  The Debtor subsequently appeared and filed a response asking the administrative law judge not to rule on the motion until

---

[1] In the instant proceeding, DEC filed a proof of claim on May 22, 2009 in the amount of $36,500, the amount of penalties claimed in the administrative enforcement case.

the Debtor had received from DEC the results of the Site investigation because its "defense to the remedies sought is impacted by the results of those tests." Attorney Affirmation of David Siegel in Opposition to Motion for Default Judgment, affirmed on June 25, 2009 (attached hereto as *Exhibit B*), ¶ 3.

At around the same time, the Debtor sought the Court's approval to retain Young Sommer, a law firm that specializes in environmental law, to assist it in the case. In its motion, the Debtor cited to the firm's experience in dealing with environmental issues, stating that it was "well qualified to represent the Debtor concerning its environmental matters including, without limitation, ongoing representation relative to claims asserted by the [DEC] pending through the New York State Attorney General's Office." Document No. 72, ¶ 11. The Court approved the motion on August 6, 2009. Document No. 73.

DEC received a copy of PES's investigation report on October 16, Goertz Aff., Exh. 1, two days after the Debtor filed its disclosure statement and proposed reorganization plan in this case. The report documents groundwater contamination adjacent to the main building on the Site, including the well network that was installed immediately west of the building. Id., ¶ 4. The pollutant PCE was detected in the groundwater at concentrations ranging from 16 to 350 parts per billion (ppb), well in excess of the 5 ppb standard. Id. In addition, PES found significant concentrations of PCE and acetone concentrations in the soil vapor samples taken at the Site. Id. Based upon a review of this report, and in consultation with the New York State Department of Health, DEC believes that at a minimum, the following additional investigation needs to be performed to safeguard public health and the environment: (i) contamination in all

media (air, water, and soil) at the Site should be completely delineated to evaluate the extent of the pollution, including whether there are any potential off-site impacts, and (ii) a soil vapor intrusion study should be performed to assess the potential human health risk to workers in the main building and on any other building within the defined area of contamination. Goertz Aff., ¶ 5. Simultaneous with the filing of this motion, DEC is filing an amended proof of claim of $56,500, which includes the $20,000 expended thus far in the Site investigation.

On October 14, the Debtor filed its disclosure statement and proposed plan of reorganization. The Court scheduled a hearing on the disclosure statement for November 18 and ordered that any objections be filed by November 10. DEC is filing it motion today so that it will also be returnable on November 18.[2]

## ARGUMENT

I. **COSTS INCURRED IN ASSURING COMPLIANCE WITH STATE ENVIRONMENTAL LAWS, INCLUDING EXPENSES PAID TO ADDRESS SITE CONTAMINATION, ARE ENTITLED TO ADMINISTRATIVE PRIORITY.**

Section 503(b) of the Bankruptcy Code provides, in pertinent part, as follows:

> After notice and hearing, there *shall* be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-
> (1) (A) the *actual, necessary costs and expenses of preserving the estate* . . .

11 U.S.C. § 503(b)(1)(A) (emphasis added). It is well-established that costs incurred by the debtor-in-possession or a government agency to address pollution on the debtor's property are "actual, necessary costs and expenses of preserving the estate." In re

---

[2] Although DEC has concerns that neither the disclosure statement nor the reorganization plan currently provide for or even mention the Debtor's responsibility for investigating and remediating contamination at the Site, the DEC is not filing a formal objection at this time, but reserves its right to do so as provided in the Court's schedule.

4

Chateaugay, 944 F.2d 997 (2d Cir. 1991); Pennsylvania Dep't of Envtl. Protection v. Conroy, 24 F.3d 568 (3d Cir. 1994); In re Wall Tube, 831 F.2d 118 (6th Cir. 1987); In re American Coastal Energy, Inc., 399 B.R. 805 (S.D. Texas 2009).

In the instant case, the post-petition actions by DEC to address investigate contamination at the Site are "actual, necessary costs and expenses of preserving the estate" and therefore entitled to administrative priority. As described above, after the Debtor declined to undertake an investigation of the Site, DEC retained PES to evaluate whether there was any soil or groundwater contamination, which the agency had reason to believe existed as a result of violations discovered during an October 2007 inspection. After conducting a subsurface investigation, PES confirmed that groundwater at the Site is contaminated with perc, a pollutant that can cause significant adverse effects to human health. The $20,000 spent by DEC thus far on the Site investigation (documented in Exhibit 2 to the Goertz Affidavit, which is also being filed with DEC's amended proof of claim), fits squarely within the precedent above holding that such expenses are entitled to administrative priority. See In re Chateaugay, 944 F.2d at 1009-1010 (EPA expenses to remove threat posed by hazardous substances held to be necessary to preserve the estate); Conroy, 24 F.3d at 569 ($100,000 spent by agency post-petition to clean up debtor's hazardous waste on site was administrative expense); In re Wall Tube, 831 F.2d at 119 ($24,000 incurred by agency post-petition to investigate debtor's property at which agency had found hazardous waste violations pre-petition held to be administrative expenses); In re American Coastal Energy, Inc., 399 B.R. at 809-12 (agency's costs to plug gas wells post-petition to remedy a pre-petition environmental obligation entitled to administrative priority).

Likewise, the additional Site investigation discussed in Mr. Goertz's affidavit (¶ 5) that DEC believes is necessary to safeguard public health and the environment – completing the evaluation of groundwater and soil on the Site to delineate the extent of the contamination (including whether there are any potential off-site impacts) and performing a soil vapor intrusion study to assess the potential human health risk to workers in the building – fit in the same category of "actual, necessary costs and expenses of preserving the estate." Mr. Goertz expects that this additional investigatory work, which will likely cost in the range of $15,000 - $25,000, will enable DEC to determine what remediation of the Site may be necessary. See id. As bringing the Site into compliance with state environmental laws preserves the estate, the actual and necessary costs of doing so are entitled to administrative priority.

## CONCLUSION

For the reasons above, the DEC requests an order that the costs and expenses incurred to address contamination at the Site are entitled to administrative expense priority under pursuant to 11 U.S.C. § 503(b)(1)(A).

Dated: November 3, 2009

Respectfully submitted,

ANDREW M. CUOMO
Attorney General of the
 State of New York
Attorney for the New York State
Department of Environmental Conservation

By: /s/ Michael J. Myers
_____
MICHAEL J. MYERS
Assistant Attorney General
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 402-2594

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF NEW YORK | Hearing Date: 11/18/09<br>Hearing Time: 10:30 a.m. |
| ---------------------------------------------------------x | Hearing Place: Albany |

In re

GREENER CLEANERS LTD.,

                   Chapter 11
                   Case No. 08-14239

             Debtor.
---------------------------------------------------------x

## CERTIFICATE OF SERVICE

   I hereby certify that on November 3, 2009, I electronically filed the New York State Department of Environmental Conservation's Motion for Determination of Administrative Expense Priority with the Clerk of the Bankruptcy Court using the CM/ECF system, which sent notification of such filing to the following:

Diana G. Adams, Esq.; Martin D. Auffredout; Francis J. Brennan, Esq.; and Christian H. Dribusch, Esq.

   And, I also certify that on November 3, 2009, I have mailed the same by United States Postal Service the above documents to the following non-CM/ECF Participants hereunder:

NONE

                   /s/ Michael J. Myers
                   _____
                   MICHAEL J. MYERS
                   Assistant Attorney General