

809 State Street • Schenectady, New York 12307-1201
Phone: (518) 374-4428
Fax: (518) 374-4451
kemcleaners@yahoo.com

RECEIVED & FILED
APR 2 6 2010
OFFICE OF THE BANKRUPTCY CLERK
ALBANY, NY

Hon. Robert E Littlefield, Jr., Chief U.S. Bankruptcy Judge
U.S. Bankruptcy Court
James T. Foley Courthouse
445 Broadway, Suite 330
Albany, NY 12207

April 23, 2010

Dear Judge Littlefield:

Since mid-February of last year I have been the acting CEO of Kem Cleaners, Inc. which is in Chapter 11 bankruptcy, case number 08-14239.

I am a semi-retired dry cleaning professional and reside in Florida. I accepted the task of trying to save the jobs of fifty employees of Kem Cleaners primarily to "give back" to the industry in which I have made my living for most of my working life.

My efforts have been moderately successful. Kem Cleaners has been able to operate at or near the breakeven point since March of 2009.

One insurmountable obstacle has presented itself and I must ask for your help in addressing it. The NYS Department of Environmental Conservation has identified a PCE spill at the Kem Cleaners plant site. While the testing company told me the site "was relatively clean" and their initial testing was "inconclusive" subsequent investigation revealed a PCE spill from some time in the past.

The principals of Kem Cleaners, Inc. expressed their desire to remediate the problem immediately. That was in October of 2009. DEC has declined Kem's efforts to resolve the problem ever since.

After five months of negotiations with no resolution in sight, the Kem principals agreed to attempt to sell the assets of the business as the only way to resolve the problems with the bankruptcy and DEC.

While the company is moderately profitable on operations it cannot produce the revenue needed to pay the court $4850.00 per quarter, its bankruptcy attorney approximately $2000.00 per month and DEC's investigation expenses of $40,000.00 so far with at least $40,000.00 more projected; $20,000.00 for remediation and $20,000.00 more for additional proposed testing.

The company has identified two separate parties who are interested in acquiring its assets and continuing to operate the business. Rather than working to facilitate the sale to another party DEC apparently would plan to draw them into the circle of liability for the old spill. (Please see the attached e-mails.) Obviously this is a deal killer for any prospective purchaser.

I am asking for your help in finding some way to move forward. If there is any way you can suggest to make progress in this situation I am willing to try. Thank you for your guidance.

Sincerely,

*Henry Cook*

Henry L. Cook
Acting CEO

772 461-5939
htbank@aol.com

Enclosures

**From:** Dean Sommer <DSommer@youngsommer.com>
**To:** John Reinhold <john@stairbuilders.biz>; Christian H. Dribusch <cdribusch@nycap.rr.com>
**Cc:** Henry Cook <htbank@aol.com>; David Siegal <d.siegal@siegalaw.com>
**Subject:** FW: Kem Cleaners
**Date:** Tue, Apr 20, 2010 11:29 am

Please see the recent response from the AAG. Dean

Dean S. Sommer
Young, Sommer LLC
5 Palisades Drive
Albany, New York 12205
(518) 438-9907 (ext. 236)
(518) 438-9914 (fax)
dsommer@youngsommer.com

www.youngsommer.com

This email is sent by a law firm and may contain confidential and privileged information. If you are not the intended recipient, please delete the email and any attachments. Please notify us if you have received this communication by mistake. Thank you.

**From:** Michael Myers [mailto:Michael.Myers@ag.ny.gov]
**Sent:** Tuesday, April 20, 2010 10:10 AM
**To:** jtphilli@gw.dec.state.ny.us; Dean Sommer
**Cc:** Christian H. Dribusch
**Subject:** Re: Kem Cleaners

*Privileged and Confidential Settlement Communication*

Thanks Dean. I spoke with Rich and Jill yesterday and we'll be having a follow-up conversation later this week after they speak with the program folks. Although I appreciate your efforts and surely can't argue with the proposition that receiving more $ toward the site is better than receiving less (my oh my), a problem with this offer from a practical standpoint (putting aside programmatic hurdles) is that assuming the investigation shows that some remediation of groundwater is required, there would be no $ allocated from Kem to do anything about it and no recourse against the new owner either (and although I acknowledge an arms length purchaser would have a good case to make under Lashins Arcade for no CERCLA liability, there would still be the exceedance of groundwater standards, an ECL violation that would be another basis for liability agst. a new owner that the State would be giving away by providing the requested covenant not to sue).

To address this practical problem, two options occur to me: (1) DEC or Kem could do additional investigation work so we have a better sense whether remediation (other than SVES) would be necessary, or (2) Kem could agree to put some additional $ into escrow to cover what our ballpark guess would be required for remediation (we could look back at the figures we used in our previous discussions). I recognize that option (1) has the drawback of delaying any potential sale. I will be talking to DEC about their ability to do add'l investigative work and also what the timing would be. The second option has the obvious drawback of the need to find additional funds. A couple of ideas would either be to restructure the proposed allocation to free up the additional $ or get the purchaser to kick in some additional $ that would go into escrow and be returned to them in the event that no remediation is required. Chris may have better ideas along these lines.

I will be back in touch after talking more with DEC, but wanted to let you know some initial thoughts.-- Mike

>>> "Dean Sommer" <DSommer@youngsommer.com> 4/19/2010 4:39 PM >>>
Greetings Michael and Jill:

As a follow up to our discussions, our client has reviewed the matter more in-depth with the prospective purchaser and the "comfort letter/covenant not to sue" issue is a required contingency to any purchase and sale. As I noted during our call, although the alternatives are limited, proceeding with the approach that we have recommended makes the most sense because it:

1. Provides for the prompt installation of the SVES;
2. Provides funds for additional investigation;
3. Provides reimbursement to the State;
4. Provides for a business to move in and operate a business.

We can discuss with the prospective purchaser the issues of access and SSDS operation and monitoring.

The reality is that the best way to maximize the recovery by the State, and the prompt installation of the SVES, is to work together with the Buyer. As I noted during our call, to reject this approach because of some institutional belief that it sets a bad enforcement precedent is, in my opinion, mistaken judgment.

Here we have the prior operator no longer associated with the business. We have a need to have an SSDS installed and operating, we have the opportunity to get substantial funds paid to the State, and we have a new business in operation, employing people and paying taxes. The alternative?: a liquidated, out of business entity, an abandoned site, and recourse only to public funds. My oh my.

Anyway, please let me know whether you have made any progress with your folks and let me know whether we can arrange to have this Buyer provided with assurances that it is not stepping into the hornet nest of pre-existing PCE impacts. By the way, the Buyer does not use PCE.

Please let me know the status of your reassessment of the potential resolution of this matter.

Dean

Dean S. Sommer
Young, Sommer LLC
5 Palisades Drive
Albany, New York 12205
(518) 438-9907 (ext. 236)
(518) 438-9914 (fax)
dsommer@youngsommer.com

www.youngsommer.com

This email is sent by a law firm and may contain confidential and privileged information. If you are not the intended recipient, please delete the email and any attachments. Please notify us if you have received this communication by mistake. Thank you.